UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MERIA IRMA RODRIGUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | 08 C 3309 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| KANE COUNTY SHERIFF'S MERIT COMMISSION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

The Kane County Sheriff's Merit Commission issued an order in May 2003 terminating Meria Irma Rodriguez for cause from her correctional officer position with the Kane County Sheriff's Department.  Rodriguez reapplied for employment with the Sheriff's Department in April 2007, and the Merit Commission declined to certify her application.  In this lawsuit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, Rodriguez alleges that the Merit Commission acted in retaliation for her February 2004 filing of charges with the Equal Employment Opportunities Commission ("EEOC") complaining of the May 2003 termination.  The Merit Commission has moved for summary judgment, and Rodriguez has moved to reopen discovery.  The Merit Commission's motion is granted, and Rodriguez's motion is denied.

**Background**

The facts are set forth as favorably to Rodriguez as the record and Local Rule 56.1 allow. Rodriguez worked as a Corrections Officer for the Kane County Sheriff's Department between 1993 and 2003.  Doc. 70-2 at ¶ 3.  She was terminated for cause in May 2003 after a two-day evidentiary hearing before the Merit Commission.  *Id*. at ¶¶ 4-5; Doc. 70-5.  The Merit

Commission found that Rodriguez had made a false allegation of sexual harassment against her coworker, had been dishonest with investigative personnel, and had improperly used offensive words. Doc. 70-2 at ¶¶ 4-5; Doc. 70-5 at 7-8. Rodriguez filed a state court action seeking administrative review of the Merit Commission's decision; the Supreme Court of Illinois ultimately dismissed Rodriguez's action on timeliness grounds. *See Rodriguez v. Sheriff's Merit Comm'n of Kane Cnty.*, 843 N.E.2d 379 (Ill. 2006).

While the administrative review action was proceeding through the state court system, Rodriguez filed two EEOC charges in February 2004. The first charge alleged that Rodriguez was fired in May 2003 in retaliation for filing three previous EEOC charges. Doc. 70-6. The second charge alleged retaliation as well as sex and national origin discrimination. Doc. 70-7. Months before filing the February 2004 EEOC charges, Rodriguez brought a federal discrimination and retaliation suit against the Merit Commission and other defendants to challenge the May 2003 termination. *See Rodriguez v. Ramsey*, No. 03 C 3930 (N.D. Ill. filed June 9, 2003). The district court, with Judge Zagel presiding, held that Rodriguez's claims against the Merit Commission were barred by res judicata in light of the Merit Commission's administrative finding that the termination was supported by good cause. *See Rodriguez v. Ramsey*, 2007 WL 141910, at *2-6 (N.D. Ill. Jan. 17, 2007). That administrative finding had become final under Illinois law in 2006, when the state supreme court upheld the dismissal of Rodriguez's administrative review action. *See Michael v. Letchinger*, 2011 WL 3471082, *9-10 (N.D. Ill. Aug. 8, 2011) (under Illinois law, "a judgment is final for preclusion purposes only if 'the potential for appellate review [has] been exhausted'") (quoting *People v. Hopkins*, 922 N.E.2d 1042, 1050-51 (Ill. 2009)).

In April 2007, Rodriguez reapplied for employment with the Sheriff's Department. Doc. 70-2 at ¶¶ 11-16. The Merit Commission was responsible for certifying applicants to the Department. *Id.* at ¶ 7. Governing rules and regulations required applicants to pass a written exam, physical test, and oral interview, and also to satisfy nine eligibility requirements, which were as follows:

1.  Be no younger than 21 years of age at the time the Eligibility List goes into effect.

2.  Be a high school graduate or have earned a Certificate of Equivalency. College education desirable.

3.  Weight and height that does not interfere with the ability to perform the essential functions and duties of a Peace Officer or a Corrections Officer, respectively.

4.  Eyesight correctable to 20/20. Be free of color blindness.

5.  Ability to pass all pre or post offer examinations prescribed by the Commission, including but not necessarily limited to: the written test, physical ability test, oral interviews, psychological evaluation and medical evaluations.

6.  Be acceptable to the Commission and/or Sheriff following investigation of background, reputation, character, and employment records.

7.  Possess a valid driver's license.

8.  Be a citizen of the United States for one (1) year.

9.  Be a resident of Kane County or the contiguous counties of McHenry, DeKalb, Will, Kendall, DuPage, or Cook within six (6) months of completion of the probationary period, and shall maintain residence in any of said counties as a condition of employment.

Doc. 70-11 at 10. Rodriguez was permitted to sit for a written exam, take a physical agility test, and attend an oral interview; she successfully completed those steps. Doc. 70-2 at ¶¶ 12, 14, 16. On May 1, 2007, however, the Merit Commission declined to certify her for employment. *Id.* at

¶ 20. In making its decision, the Merit Commission was aware of the basis for her May 2003 termination and also of her reputation and character. *Id*. at ¶¶ 18-19. Rodriguez was not personally informed of the reasons for the denial and did not speak with any member of the Merit Commission about the certification process. *Id*. at ¶¶ 21-22.

Rodriguez filed the present lawsuit against the Merit Commission in June 2008. Her amended complaint advances one claim: that the Merit Commission violated Title VII in May 2007 by declining to certify her for employment in retaliation for the two EEOC charges she filed in February 2004. The parties engaged in discovery, and the Merit Commission moved for summary judgment. Rodriguez opposes summary judgment and also moved to reopen discovery.

## Discussion

### I. The Merit Commission's Summary Judgment Motion

Title VII forbids an employer from discriminating against an employee who "opposed any practice" prohibited by Title VII or who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). "The antiretaliation provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms … by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)).

Rodriguez may forestall summary judgment through the direct or indirect methods of proof. *See Dickerson v. Bd. of Trs. of Comty. Coll. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). Rodriguez pursues only the direct method. Doc. 77 at 13-14. Under that method, a plaintiff

-4-

"must present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 687 (7th Cir. 2010) (internal quotation marks omitted); *see also Coleman v. Donahoe*, __ F.3d __, 2012 WL 32062, at *18 (7th Cir. Jan. 6, 2012); *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003). The parties do not dispute that Rodriguez engaged in statutorily protective activity: the filing of two EEOC charges in February 2004.[*] Nor do they dispute that Rodriguez suffered a materially adverse action: the Merit Commission's May 2007 decision to decline to certify her for employment. *See Burlington*, 548 U.S. at 67 (Title VII's anti-retaliation provision extends to post-employment retaliatory acts); *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 893 (7th Cir. 1996) (failure to rehire held to be an adverse employment action). The Merit Commission focuses on the third element, causation.

Rodriguez can establish causation by showing that her EEOC charges "were a substantial or motivating factor" in the Merit Commission's decision to decline to certify her. *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 675 (7th Cir. 2011) (internal quotation marks omitted). Causation may be shown by direct evidence, which "entail[s] something akin to an admission by the employer ('I'm firing you because you had the nerve to accuse me of sex discrimination!')." *Coleman v. Donahoe*, 2012 WL 32062, at *18 (some internal quotation

---

[*] In her opposition brief, Rodriguez argues that the Merit Commission retaliated against her for filing *five* EEOC charges; in addition to the two February 2004 charges, Rodriguez references three charges she filed in 2001 and 2003. Doc. 77 at 13; Doc. 78-6 at 47-52. A plaintiff must obtain leave of the court or the opposing party's written consent before amending a claim. *See* Fed. R. Civ. P. 15(a). Because Rodriguez did not seek leave of the court and did not receive the Merit Commission's consent to amend her retaliation claim, the three other EEOC charges will not be considered. *See Garner v. Kinnear Mfg. Co.*, 37 F.3d 263, 269-70 (7th Cir. 1994) (affirming district court's denial of the plaintiff's request to amend the complaint after the opposing party had moved for summary judgment). The court notes for good measure that the disposition of this case would not change even if the three additional charges were considered.

marks omitted); *see also Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009).

Causation also may be shown "by presenting a 'convincing mosaic' of circumstantial evidence

that would permit the same inference [of retaliation] without the employer's admission."

*Coleman*, 2012 WL 32062, at *18 (some internal quotation marks omitted). Pertinent

circumstantial evidence consists of (1) "suspicious timing, ambiguous statements oral or written,

behavior toward or comments directed at other employees in the protected group, and other bits

and pieces from which an inference of [retaliatory] intent might be drawn," (2) "evidence

showing that the employer systematically treated other, similarly situated … employees better,"

or (3) "evidence that … the employer's justification [for the adverse action was] pretextual."

*Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011) (internal quotation

marks omitted); *see also Coleman*, 2012 WL 32062, at *19. The appropriate focus "is not

whether the evidence offered is direct or circumstantial but rather whether the evidence points

directly to a discriminatory reason for the employer's action." *Atanus v. Perry*, 520 F.3d 662,

671 (7th Cir. 2008) (internal quotation marks omitted); *see also Davis v. Time Warner Cable of

Se. Wis., L.P.*, 651 F.3d 664, 672 (7th Cir. 2011).

The three-year gap between Rodriguez's protected activity (February 2004) and the Merit

Commission's adverse action (May 2007) is not her ally. Governing precedent holds that a

"substantial time lapse … is counter-evidence of any causal connection." *Oest v. Ill. Dep't of

Corr.*, 240 F.3d 605, 616 (7th Cir. 2001) (internal quotation marks omitted) (ellipses in original).

As the Seventh Circuit has explained, "[t]he inference of causation weakens as the time between

the protected expression and the adverse action increases, and then additional proof of a causal

nexus is necessary," adding that it has "permitted retaliation charges to proceed in the face of

long intervals only when additional circumstances demonstrate that an employer's acts might not

-6-

be legitimate." *Ibid*. (internal quotation marks omitted); *see also George v. Walker*, 535 F.3d 535, 539 (7th Cir. 2008) (same); *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1008 (7th Cir. 2002) (same). Rodriguez points to three such circumstances in an attempt to establish causation. Each misses the mark.

First, Rodriguez devotes significant attention to challenging the validity of the Merit Commission's May 2003 decision to terminate her. In Rodriguez's prior federal suit, Judge Zagel explained that res judicata barred Rodriguez from challenging that decision. *See Rodriguez*, 2007 WL 141910, at *4-5. Rodriguez offers no persuasive reason why Judge Zagel was wrong, and his ruling applies with equal force here.

Second, Rodriguez contends that one week before she was denied certification, the Merit Commission amended its rules and regulations to give itself the discretion to decline—before administering the written exam, physical agility test, and oral interview—applications from former employees who previously had been discharged. The provision reads:

> Section 3: Re-Employment After Disciplinary Procedures And Discharge
>
> Any person who has been discharged from employment at the Sheriff's Department may seek a new appointment in the Sheriff's Department by submitting an application to the Commission, in competition with all other applicants. In its discretion, the Commission may consider the application of any such employee and go forward with the Article IV appointment process, or the Commission may decline to consider the application and decline to go forward with the Article IV appointment process. In exercising its discretion, the Commission may consider the employee's prior discharge and any other information the Commission possesses regarding the background, reputation, character and employment history of the applicant.

Doc. 70-15 at 23. Rodriguez argues that the Merit Commission adopted the amendment to prevent Kane County Sheriff Patrick Perez from hiring her, and that the Merit Commission's

-7-

maneuver reveals that it still bore a grudge against her for filing the two EEOC charges back in February 2004.

The argument fails to persuade. The undisputed evidence shows that the Merit Commission did not apply the amendment retroactively to Rodriguez's application. To the contrary, Rodriguez took part in the full application process set forth by the pre-amendment rules, including the written exam, the physical agility test, and the oral interview. Consistent with the pre-amendment rules, Rodriguez also was required to satisfy the nine eligibility requirements. The Merit Commission's May 2003 finding that Rodriguez acted dishonestly, offensively, and unprofessionally—a finding of which the Merit Commission indisputably was aware in May 2007—rendered her unable to satisfy the sixth criterion, which required applicants to be "acceptable to the Commission and/or the Sheriff following investigation of background, reputation, character, and employment records." Doc. 70-11 at 10.

Third, Rodriguez points to two passages from Sheriff Perez's deposition. The first passage, which took place during questioning by Rodriguez, reads as follows:

> Q:    Do you recall making a statement to me that you and
>       [Commissioner] James Klinkhamer had an argument and he stated
>       that it would only be a matter of time before Irma would file another
>       sexual harassment complaint?
>
> A:    No, you know what, I don't remember that and I don't remember
>       having an argument with him.

Doc. 70-22 at 5. Rodriguez argues that Perez's failure to remember whether Commissioner Klinkhamer stated that "it would only be a matter of time before Irma would file another sexual harassment complaint," *ibid*., "does not mean that the conversation did not take place." Doc. 77 at 22. True enough, but Perez's failure to remember likewise is not evidence that the conversation *did* take place. *See Chi. United Indus., Ltd. v. City of Chi.*, __ F.3d __, 2012 WL

202783, at *5 (7th Cir. Jan. 24, 2012) (testimony that "Wolfe does not recall ordering anything from CUI … was not enough to raise a triable issue" ).  Perez's failure to remember is evidence only of his failure to remember, and thus does not help to establish causation.

The next passage of Sheriff Perez's deposition, which took place during questioning by the Merit Commission's attorney, reads as follows:

> Q:     At any time during those conversations, did Mr. Klinkhamer say to
>        you that we are not going to certify Ms. Rodriguez because of the
>        2003 lawsuit?
>
> A:     I don't remember if it was the lawsuit.  He had made some
>        statement having to do with not wanting any more problems.
>
> Q:     That's because he had learned other people from the jail—at least he
>        told you from conversations he had with you—had come to him and
>        didn't want Ms. Rodriguez back?
>
> A:     I believe so, yes.

Doc. 70-22 at 9.  As with the first piece of testimony, Rodriguez contends that Perez's failure to remember whether Commissioner Klinkhamer told him that the Merit Commission declined to certify Rodriguez because of the earlier lawsuit is evidence of retaliation.  Doc. 77 at 23-24. Again, Perez's failure to remember is evidence of nothing more, nothing less, than his failure to remember.

To the extent any doubt remains about what Sheriff Perez recalled regarding his conversation with Commissioner Klinkhamer, it is dispelled by the following passage:

> Q:     And Ms. Rodriguez asked you about if you recall some type of
>        conversation between February of '07 and April '07 with Ms.
>        Klinkhamer—Mr. Klinkhamer, I should say.  You said you had a
>        number of conversations with him during that time frame most
>        likely?
>
> A:     Yes.

> Q:     During any of those conversations, did Mr. Klinkhamer ever say to
> you that we are not going to certify Ms. Rodriguez because she filed
> an EEOC complaint?
>
> A:     No.

Doc. 70-22 at 9.  This testimony, which unlike the two passages cited by Rodriguez actually

speaks to the content of Perez's conversations with Klinkhamer, fatally undermines Rodriguez's

attempt to use Perez to establish that Klinkhamer told him that the Merit Commission declined to

certify Rodriguez because of her EEOC charges.

Accordingly, Rodriguez has failed to adduce any evidence that would permit a

reasonable jury to find that the Merit Commission had a retaliatory motive for its May 2007

refusal to certify her for employment with the same Sheriff's Department from which she had

been fired in May 2003 for dishonesty and unprofessional conduct.  Summary judgment

therefore is appropriate on the retaliation claim.  *See Argyropolous v. City of Alton*, 539 F.3d

724, 734 (7th Cir. 2008) (in affirming the district court's grant of summary judgment on a

retaliation claim, explaining that "any inference of a causal link ... would be based on

speculation or conjecture, and such inferences are beyond the scope of [the court's] obligation to

the nonmovant") (internal quotation marks omitted).

Even if Rodriguez had adduced *some* evidence that the Merit Commission had a

retaliatory motive, summary judgment still would be appropriate.  A retaliation defendant is

entitled to summary judgment if it "presents unrebutted evidence that it would have taken the

adverse employment action against the plaintiff anyway, in which event the defendant's

retaliatory motive, even if unchallenged, was not a but-for cause of the plaintiff's harm." *Egan

v. Freedom Bank*, 659 F.3d 639, 642 (7th Cir. 2011) (internal quotation marks omitted).  As

noted above, an applicant to the Sheriff's Department could be certified only if she was

"acceptable to the Commission and/or the Sheriff following investigation of background, reputation, character, and employment records." Doc. 70-11 at 10. It is undisputed Rodriguez was terminated in May 2003 from the Sheriff's Department for dishonesty, unprofessional conduct, and knowingly making a false allegation against a coworker. It also is undisputed that in declining to certify Rodriguez in May 2007, the Merit Commission knew the circumstances of the May 2003 termination. Doc. 70-5 at 7-8; Doc. 70-2 ¶¶ 18-19. Given this record, a reasonable jury could not find that Rodriguez's February 2004 EEOC charges were the but for cause of the Merit Commission's refusal to certify her in May 2007. The only reasonable conclusion a jury could draw is that the Merit Commission would have denied certification regardless of any retaliatory motive because Rodriguez was reapplying for a position—a *correctional officer* position at that—from which she had been fired with ample justification. *See Chi. United Indus.*, 2012 WL 202783, at *4 ("the actions of which [the plaintiff] complains were not retaliation but simply the continuation beyond the initial five-month period of the cold-shoulder treatment that the [defendant] had given the company during that period because of its suspicions").

## II.    Rodriguez's Motion to Reopen Discovery

Rodriguez moved to reopen discovery one year after the Merit Commission filed its summary judgment motion and months after that motion was fully briefed. Rodriguez asserts that she "discovered through family members that are employed by the Sheriff's Dept" that the Merit Commission had certified two officers previously fired by municipal police departments in Geneva, Illinois, and Aurora, Illinois. Doc. 86. Rodriguez maintains that this new information warrants reopening discovery and giving her an opportunity to depose six individuals, including the two certified officers and three members of the Merit Commission.

-11-

Rodriguez's motion does not mention Federal Rule of Civil Procedure 56(f) (since amended and re-codified as Rule 56(d)), which governs situations where the nonmovant asserts that further discovery is needed to respond to a pending summary judgment motion. *See Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 731 (7th Cir. 2004). Rodriguez's *pro se* status might excuse her from citing Rule 56(f), but it does not excuse her from complying with the rule's commands. *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("even *pro se* litigants must follow rules of civil procedure"); *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) ("rules apply to uncounseled litigants and must be enforced"). Rule 56(f) required a party to show "by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(f) (2010). A litigant's failure to file the required affidavit warrants denying the motion. *See First Nat'l Bank & Trust Corp. v. Am. Eurocopter Corp.*, 378 F.3d 682, 693-94 (7th Cir. 2004); *Woods v. City of Chi.*, 234 F.3d 979, 990 (7th Cir. 2000); *APC Filtration, Inc. v. Becker*, 2009 WL 187912, at *2 (N.D. Ill. Jan. 26, 2009) (denying Rule 56(f) motion where the movant, one year after discovery closed, failed to provide an affidavit from or to specifically identify the source of the "new information"). Because Rodriguez did not file an affidavit, her request to reopen discovery is denied.

There is a separate and independent ground for denying the motion. Evidence regarding the two certified officers had no conceivable relevance to Rodriguez's claim unless, perhaps, they were terminated for dishonesty; in that case, Rodriguez might possibly have argued that the evidence cast doubt on the Merit Commission's submission that it declined to certify Rodriguez because she had been terminated for dishonesty. But Rodriguez does not assert, either in her motion or reply brief, that the two officers were terminated *for dishonesty*; she says only that the two officers were "terminated," without indicating the grounds. Doc. 86 at 1-2; Doc. 92 at 4.

Accordingly, aside from her failure to submit the affidavit required by the former Rule 56(f), which is dispositive by itself, Rodriguez provided no basis to believe that the discovery she sought would have allowed her to avoid summary judgment. *See Kaufman v. McCaughtry*, 419 F.3d 678, 686 (7th Cir. 2005).

### Conclusion

For these reasons, Rodriguez's motion to reopen discovery is denied, and the Merit Commission's motion for summary judgment is granted. Judgment is entered in favor of the Merit Commission and against Rodriguez.

January 31, 2012

_____
United States District Judge